[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties herein, Judith H. Moore (wife) and W. John Moore (husband) are a married couple. The plaintiff wife brings this action for the dissolution of the marriage.
Both parties are represented through counsel. Preliminary motions and hearings were held and decided, including a failed attempt at reconciliation.
The complaint by the wife alleges and the husband does not dispute these allegations that the marriage of the parties has broken down irretrievably.
The court after hearing the parties, their witnesses, and examining their documentary evidence, as presented in court, together with the application of the applicable statutory criteria; finds, that the plaintiff's allegations set out in her complaint have been proved, and that the marriage of the parties has broken down irretrievably.
The parties, however, are still at issue with regard to the party at fault which resulted in the breakdown of the marriage; as well as which assets are those of the marriage and which are those of the individual party; and, what comprises a fair division of those assets between the parties.
A brief historical recitation of the relevant factual relationship of the parties during the marriage will help to delineate the issues of fault, as well as set out the marriage assets as opposed to individual assets.
The parties were married on February 21, 1975. Each had been previously married and divorced. Each had children during the prior marriage. The plaintiff's two minor children were placed in her custody. She was awarded financial support for them. These children lived with the parties herein after their marriage. CT Page 10845
The defendant had four minor children during his prior marriage. Their custody and residence remained with their mother. The defendant was ordered to pay support for the children to his former wife.
In addition, each party received assets from the prior marriage. The plaintiff herein received a house with furniture and cash with a total value of approximately $61,000.00. The defendant herein also received assets including a house with a very small net valuation.
The defendant disposed of his house. The parties herein together with the plaintiff's two minor children then lived in the plaintiff's house.
During the marriage the plaintiff, for the most part, was a housewife. She stayed at home and cared for her two children and the defendant. She eventually did work at various part time employment with minor net earnings. She also received support payments from the father of the two minor children.
The defendant continued in his employment with an insurance company (Aetna) where his earnings annually went from the low or mid twenty thousands to the upper thirty thousands when he retired.
Income received by each party was controlled by them individually although at the beginning and through the greater portion of the marriage the parties maintained a joint checking account from which the household expenses were paid. The defendant contributed weekly from his earnings to the checking account varying from $150.00 in the early years of the marriage to about $300.00 in the latter years.
The plaintiff did not contribute her part time employment earnings to the joint account. She set up an individual checking account for the dispersal of funds under her control.
In addition to wage earnings received by the individual parties, each also received other income: i.e., stock dividends, bond interest, rental income and inheritances. These payments individually received by a party remained under that party's sole control and use.
With regard to expenditures by the parties, the plaintiff CT Page 10846 wife made most, if not all of the payments relating to the household expenses out of the monies supplied weekly by the defendant. She at times provided her own funds when a shortfall occurred. In addition, she provided all the funds for maintenance, repair and improvements to the house. Title was in her name alone and it was understood that it was her property.
The plaintiff also received money and assets of her father's prior to his death. These transfers to her were carried out through a power-of-attorney to her from her father.
The plaintiff invested these various assets in real estate, stocks, mutual funds, etc. For the most part these assets increased in value as well as paid dividends or interest.
The defendant husband on the other hand brought into the marriage considerably less in assets. However, he had a secure mid-level executive position with Aetna. He received periodic salary increases with health and pension benefits. Thus, the parties lived a comfortable life style. The plaintiff wife stayed home and cared for the needs of the family. In subsequent years when her children were able to care for their own needs she would take on part time employment although this was not required for household financial needs.
The parties each contributed more or less based on each's income, toward the expenses of the household. However, each also retained portions of the income for individual use without an accounting to the other party.
Thus, there was a tacit understanding that certain assets or monies were controlled by each individually. For example, the house was brought into the marriage by the wife. Title was in her name and it was understood to be her house. On the other hand, the husband turned over weekly a definite sum to the wife for household expenses. This weekly sum increased over the years as the husband's salary increased.
Improvements to the house, as well as repairs, were decided by and paid for by the wife. Although the husband was aware of and participated in these matters it was the wife who made these decisions.
Each party had a car. Each decided individually on a car and paid for it without much input from the other spouse. CT Page 10847
The arrangements between the parties with regard to division of responsibilities, control of assets, etc. did not develop immediately after the marriage. It was the result of trial and error, needs of the parties and individual determination as to how to handle assets controlled by each. This method seemed to work out through most of the marriage. The plaintiff's children eventually grew up and left the home. The defendant's children grew older and he ceased paying support for them. The plaintiff continued to work at part time employment. When the defendant was in his late fifties or early sixties he had the opportunity to retire from Aetna under a "golden handshake" arrangement. He accepted the offer. Beside pension benefits he received health insurance benefits. He was permitted to include his wife as an irrevocable beneficiary on some of the benefits.
The defendant's retirement did not prove to be the happy, relaxed way of life each had expected. The defendant's personality leaned to the taciturn, with explosive eruptions of profane and/or coarse language. The plaintiff was in the habit of going out with her friends and continued those social activities after the defendant retired. There were explosive domestic confrontations between them. These appear to result from personality traits of one party that was highly initiating to the other. There also were signs of a breakdown of trust in one another.
All of these differences and disagreements eventually led to the defendant leaving the home and acquiring as an apartment for himself. This dissolution was then instituted by the wife.
The court taking into consideration the statutory criteria, the evidence presented in court, including inter alia the needs of each of the parties, their ages, their income, health, potential for income increases. etc. finds:
Each of the parties contributed equally to the marriage breakdown, with no reasonable prospect of reconciliation of the parties.
That there are assets brought into the marriage by each of the parties and which remain that party s assets. That some of these assets increased in value because of the marriage relationship and thus are considered marriage assets. CT Page 10848
That each party has income from various sources. That these incomes are considered assets of the marriage.
That each party has some potential for income enhancement: The plaintiff to some minor extent as a part time employee. She has however shown a financial investment management capacity as shown by her ability to greatly increase the value of her assets.
The defendant, has a lesser capacity of enhancing his income. His employment expertise was in a narrow field limited to the insurance industry. Because of his age, 70+ years, his employment prospects are practically non-existent as are his prospects for adding to his income.
As to the division of the assets, those assets attributable to each of the parties and which are not considered to be assets of the marriage are:
Assets of the plaintiff: The house at 59 Cornwall Drive, Burlington. Those net assets gifted to the plaintiff by her father, as well as those items of personal property contained in the house at the time of the marriage.
Those assets attributable to the marriage for purposes of distribution between the parties includes increases in value of assets belonging to each individually. These increases, together with dividends, interest from savings, etc. become marital assets, as are distributions from investments, as well as real estate gains. In addition, income from whatever source received by each party for the most part becomes a marital assets.
Therefore, those assets previously set out belonging to each party is to be that party's individual asset. Those items set out as marital assets are distributed for the most part to each party roughly on a 50%/50% basis.
Therefore, it is the judgment of the court, that the marriage of the parties is declared to be dissolved, that each party is declared to be single and unmarried.
That those assets presently in the name of, or in the possession of the individual parties is to be that party's assets including both real and personal properties.
That those liabilities listed in the name of one individual CT Page 10849 party is to be that party's responsibility to pay, and to hold the other party harmless with regard to that or those liabilities, except for, that liability listed on the plaintiff's financial affidavit as a real estate mortgage in the amount of $8,300.00. This mortgage payment is to be the responsibility for payment by the plaintiff, and she is to have it removed from the defendant's credit report indebtedness within 60 days.
That the parties execute all required documents to implement these orders including those for stock, bonds, funds, deferred compensation plans, with specific emphasis on defendant's need to sell or trade the Aetna stock in his 401K plan to permit him to purchase a home.
The defendant will maintain the plaintiff as a 50% contingent annuitant on his Aetna pension, and as the 100% annuitant on his Safeco annuity. This to be in the nature of alimony to the plaintiff from the defendant.
That the defendant maintain the plaintiff on his health insurance plan pursuant to COBRA, subject to the plaintiff paying any costs or premiums associated with such insurance for her.
That the defendant return to the plaintiff her father's military gun in his possession or control; or alternatively, if sold by him, the sum for which it was sold; or if turned over to a person or organization without cost, the reasonable value of that gun.
The plaintiff may resume her maiden name of Hanson.
JULIUS J. KREMSKI JUDGE TRIAL REFEREE